UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

Deborah Marie Robinson Foor,

                Plaintiff,

    v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

                Defendants.

Case No. 3:16-cv-05838-TLF

ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS

Ms. Foor has brought this matter for judicial review of defendant's denial of her application for supplemental security income (SSI) benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons set forth below, the Court finds that defendant's decision to deny benefits should be affirmed.

## FACTUAL AND PROCEDURAL HISTORY

On September 9, 2013, Ms. Foor filed an application for SSI benefits alleging that she became disabled beginning February 16, 2011. Dkt. 10-2, Administrative Record (AR) 8. That application was denied on initial administrative review and on reconsideration. *Id.* In March 2015, an administrative law judge (ALJ) held a hearing, at which Ms. Foor and a vocational expert appeared and testified. AR 27-76.

In a written decision on May 8, 2015, the ALJ found that Ms. Foor could perform "jobs that exist in significant numbers in the national economy" and therefore was not disabled. AR

ORDER - 1

19-20. The Appeals Council denied Ms. Foor's request for review on August 3, 2016, making the ALJ's decision the final decision of the Commissioner. *See* AR 1-3. Ms. Foor appealed that decision in a complaint filed with this Court on September 30, 2013. Dkt. 3; 20 C.F.R. § 416.1481.

Ms. Foor seeks reversal of the ALJ's decision and remand for an award of benefits, or in the alternative for further administrative proceedings, arguing the ALJ erred:

(1) in discounting Ms. Foor's credibility; and

(2) in finding Ms. Foor could perform other jobs existing in significant numbers in the national economy.

For the reasons set forth below, however, the Court disagrees that the ALJ erred as alleged, and therefore affirms the decision to deny benefits.

## DISCUSSION

The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If the ALJ finds the claimant disabled or not disabled at any particular step, the ALJ makes the disability determination at that step and the sequential evaluation process ends. *See* 20 C.F.R. § 416.920. At issue here is the ALJ's evaluation of Ms. Foor's credibility and his conclusion at step five that Ms. Harriman could perform jobs existing in significant numbers in the national economy.

This Court affirms an ALJ's determination that a claimant is not disabled if the ALJ applied "proper legal standards" in weighing the evidence and making the determination and if "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F. Supp. 522, 525 (E.D. Wash. 1991). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193. This requires "more than a scintilla of evidence" but "less than a preponderance." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).

This Court will thus uphold the ALJ's findings if "inferences reasonably drawn from the record" support them. *Batson*, 359 F.3d at 1193. If more than one rational interpretation can be drawn from the evidence, then this Court must uphold the ALJ's interpretation. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

I. <u>The ALJ's Assessment of Ms. Foor's Credibility</u>

Questions of credibility are solely within the control of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. *Allen*, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. *See id.* at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as substantial evidence supports that determination. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester*, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. *See O'Donnell v. Barnhart*, 318 F.3d 811, 818 (8th Cir. 2003); *Berry v. Astrue*, 622 F.3d 1228, 1235 (9th Cir. 2010) (affirming credibility finding based on affirmative evidence of malingering, where claimant's activities contradicted asserted

limitations and claimant's statements indicated ability to work but reluctance to do so for fear of affecting benefits).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. *Id.*

Here, the ALJ did make a finding of malingering, and affirmative evidence supports that finding. AR 10; *see Berry*, 622 F.3d at 1235. In February 2014, Dr. Lezlie Pickett performed a consultative examination on Ms. Foor. AR 503-510. Dr. Pickett recorded that Ms. Foor told her that she had applied for SSI before and been denied, "[b]ut this time I am saying it is for my back and my PTSD or something. I think that was what they said to call it . . . PTSD or TPSD." AR 504. Asked what her symptoms were, she said that she "didn't bring the list" and "didn't know what to say . . . I forgot what I was supposed to day [sic]." AR 504. Pressed to describe any symptoms of mental health issues, Ms. Foor expressed anxiety about her income. AR 504.

Dr. Pickett stated that throughout the exam she observed Ms. Foor to have abilities that directly contradicted limitations she had just claimed. AR 508. For example, after Ms. Foor complained of "severe pain" and stiffness in her neck and back, Dr. Pickett observed her "repeatedly demonstrate the very things that she had just said were 'impossible' to do." AR 508. Dr. Pickett further observed that while Ms. Foor said "she 'could hardly move and get around,'" she "was actually very physically active during the interview." AR 508. Dr. Pickett concluded that the difference between Ms. Foor's reported disabilities and the abilities Dr. Pickett observed

"clearly indicated that she was exaggerating and malingering symptoms for purposes of obtaining disability funds." AR 508.

Dr. Pickett also recorded numerous statements by Ms. Foor that support the ALJ's finding that Ms. Foor "had a clear disability focus" and "secondary gain issues." *See* AR 16. A claimant's desire or expectation of receiving benefits in seeking treatment is not, by itself, substantial evidence of malingering. *See Cha Yang v. Comm'r of Soc. Sec. Admin.*, 488 F. App'x 203, 205 (9th Cir. 2012) (unpublished) (observing that "no claimant would ever be found credible" if that were the case). But such evidence may exist where a claimant purposefully refrained from working. *See Berry*, 622 F.3d at 1235. Ms. Foor told Dr. Pickett that she had worked at the Puyallup Fair and as a caretaker and that she always "worked under the table so I didn't have to claim anything." AR 506. She continued, "When I went to work full-time at Bakke they cut my food stamps and medical and I decided it wasn't worth working, so I went back on that and now I am trying to get on this so I can have more steady money and not have to fund jobs under the table." AR 506. Notes by other medical providers also support the ALJ's finding of "secondary gain issues." See AR 616, 628-29, 666. These records, together with Dr. Pickett's observations and diagnosis, provide affirmative evidence for the ALJ's malingering finding.

Ms. Foor asks the Court to read Dr. Pickett's evaluation "in the broader context of [Ms. Foor's] situation:" that she was flustered, may have had too many conditions and diagnoses over the years to keep track of, and had already gone through one consultative exam that week. Dkt. 12, p. 8. But this Court must uphold the ALJ's decision "[w]here evidence is susceptible to more than one rational interpretation." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Moreover, Ms. Foor does not challenge the basis of Dr. Pickett's opinion or the ALJ's reliance

on it.

Because we affirm the finding of malingering, the ALJ was not required to provide clear and convincing reasons to discredit Ms. Foor's testimony. Nonetheless, the Court notes that the ALJ did so. First, the same evidence that supports the malingering finding provided the ALJ with a clear and convincing reason to discredit Ms. Foor. The ALJ used ordinary techniques of evaluating credibility, observing the above evidence of exaggeration and self-limitation. AR 16, 508. Second, the ALJ made general findings that Ms. Foor lacked credibility and also identified particular symptom testimony he found not credible: Ms. Foor reported difficulty seeing, but the record contains no evidence she sought treatment for her vision; Ms. Foor reported difficulty walking, but her own reports about her activities contradict this; and Ms. Foor stated she could not lift 10 pounds, but her consultative examination, functioning reports, and treatment notes contradict this. AR 16-17, 448, 500, 506, 508; *see Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1225 (9th Cir. 2010). Finally, the ALJ found that objective medical evidence was inconsistent with the limitations Ms. Foor alleged. *See* AR 15, 539-41, 644, 647, 650, 1083, 1105. Ms. Foor does not challenge the ALJ's evaluation of the medical record and has thus waived such a challenge. *See Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir.1998) (matters not specifically and distinctly argued in opening brief ordinarily will not be considered).

For the above reasons, the ALJ did not err in discounting Ms. Foor's testimony.

II. <u>The ALJ's Step Five Determination</u>

If a claimant cannot perform his or her past relevant work, at step five of the sequential disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant can do. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162-63 (9th Cir. 2000); *Tackett*, 180 F.3d at 1100-1101.

This Court will uphold an ALJ's step five determination if the weight of the medical evidence supports the hypothetical the ALJ posed to the vocational expert. *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's functional limitations "must be accurate, detailed, and supported by the medical record." *Id.* (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ uses the claimant's residual functional capacity (RFC) assessment to pose the hypothetical question to the vocational expert. Social Security Ruling (SSR) 96-8p, 1996 WL 374184 *2. The RFC is what the claimant "can still do despite his or her limitations." *Id.*

The ALJ found Ms. Foor had the RFC:

> **to perform light work as defined in 20 CFR 416.967 (b) subject to the following limitations. The claimant can stand or walk six hours in an eight-hour workday and can sit six hours in an eight-hour workday. She can occasionally climb ramps or stairs. She can perform work that does not require her to climb ladders, ropes, or scaffolds. She can occasionally perform other postural activities such as climbing ramps or stairs, balancing, stooping, crouching, crawling, and kneeling. She can frequently handle bilaterally. She can perform work that avoids concentrated exposure to hazards such as moving machinery and unprotected heights. She can perform work that only requires occasional far visual acuity. The claimant can understand and remember simple job instructions. She can perform simple routine repetitive tasks. She learns best when provided written instructions. She can perform work that is not done at a face paced production requirement. She can tolerate brief superficial interaction with the public, coworkers, and supervisors. The claimant can perform work in an environment that is not noisy, busy, or crowded.**

AR 12 (emphasis in the original). Accordingly, the ALJ posed a hypothetical to the vocational expert incorporating these limitations. AR 68-70. Based on the expert's answers, the ALJ found

ORDER - 7

Ms. Foor could perform other jobs existing in significant numbers in the national economy. AR 19-20.

Ms. Foor contends that the ALJ erred in posing his hypothetical because it did not reflect the limitations that she testified to—that she could sit for only one and a half hours, not six, and could lift no more than 10 pounds. AR 53, 71. But although Ms. Foor challenges the sitting and lifting limitations in the RFC, she does not challenge the ALJ's underlying discussion of the medical evidence, which supports the limitations the ALJ included. For example, the ALJ accorded "great weight" to Dr. Andrea Opalenik's opinion, including that Ms. Foor "did not have limitations in sitting" and could lift 20 pounds occasionally and 10 pounds frequently. AR 18; *see* AR 500. He also gave "great weight" to Dr. Guillermo Rubio's opinion, including that Ms. Foor could sit for six hours of an eight-hour workday and lift 20 pounds occasionally and 10 pounds frequently. AR 18-19; *see* AR 97. Ms. Foor does not challenge the ALJ's treatment of this medical opinion evidence. Because the unchallenged medical opinion evidence supports the sitting and lifting limitations in the RFC, the ALJ did not err in posing a hypothetical to the vocational expert that included those limitations. *See Martinez*, 807 F.2d at 774.

Finally, Ms. Foor contends that the ALJ erred in determining the jobs she could perform at step five. She contends that the Vocational Expert's testimony potentially conflicts with the relevant definitions in the Dictionary of Occupational Titles (DOT). Dkt. 12, pp. 9-10. She contends that because the RFC limits her to simple job instructions, the "complexity of copy machines" would make the occupation of photocopy machine operator too difficult. And she contends that work as an office helper or a photocopy machine operator would require more than brief, superficial interactions with coworkers.

"Vocational experts can testify whether particular applicants for disability benefits would

be able to perform subcategories of jobs within the [Dictionary of Occupational Titles (DOT)]." *Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995). The DOT is presumptively authoritative regarding job classifications, although that presumption is rebuttable. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir.1995).

Here, however, Ms. Foor does not cite the definitions of those occupations in the DOT and instead contends that "common sense would indicate that Ms. Foor would be unable to perform these representative occupations." Dkt. 12, pp. 9-10. This argument is speculative and unsupported, and Ms. Foor thus fails to rebut the presumptive authority of the DOT definitions. *Johnson*, 60 F.3d at 1435.

## CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ properly determined Ms. Foor to be not disabled. The Commissioner's decision to deny benefits therefore is AFFIRMED.

Dated this 23rd day of June, 2017.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge